Swing, J.
(orally.).
This is an action in which it is sought to enjoin the defendant from interfering ■ in any - manner witli the delivery of certain mail -matter to plaintiff.
Raphael M. Pedretti and Charles A. Pedretti are brothers and were partners in business under the firm name of P. Pedretti’s Sons. Differences arose between them in the business and in consequence thereof Raphael M. Pedretti brought suit in this court, ease number 135210, for a dissolution of the partnership and an accounting and settlement of the partnership affairs. In that ease Wade Cushing, Esq., was appointed receiver and shortly afterwards he was appointed referee.
Subsequently, aided by the good offices of Mr. Cushing, as referee, a -settlement of all matters of difference was made between the parties and reported to -the court by the referee and his report was approved by the court and the settlement was carried out.
*114 The terms of the settlement are set forth in writing in several documents signed by the parties.
The first of the documents is the proposition made by Charles A. Pedretti to Raphael M. Pedretti and accepted by Raphael M. Pedretti.
This proposition contains the following statements, to-wit:
"The name of F. Pedretti’s Sons to be abandoned and an agreement drawn between my brother and myself that neither of us shall use the name of F. Pedretti’s Sons, the style of the old partnership, and I agree to accept in full settlement of all my right, title and interest in and to the real estate and all other property of the partnership of F. Pedretti’s Sons, including a full and complete settlement of the business, the partnership, the assets and the accounts of the said partnership to this date the sum of $6,250 to be paid to me in cash within fifteen days from the date of this agreement, and the following personal property now located in the building owned by F. Pedretti’s Sons, No. 10 West Ninth street (here is a statement of various articies of personal property in that building which was the place of business of the firm), and I further agree on my part to execute a deed, signed by myself and wife for the real estate and bill of sale for all personal property in connection therewith, all my personal property to be delivered to me on demand. ”
The said proposition was accepted, in writing by Raphael M. Pedretti.
In accordance with the proposition that the name of F. Pedretti s Sons be abandoned and an. agreement drawn that neither of the parties should use the name of F. Pedretti’s Sons, the style of the old partnership, an article of agreement was drawn and signed by the parties containing the following statements and provisions:
“Witnesseth, that each of said parties promises and agrees to and with the other under no circumstances directly or indirectly to make any use in any manner whatsoever of the name F. Pedretti’s Sons or any including F. Pedretti except in so far as may be necessary to collect outstanding firm accounts and winding up the unfinished business of the said firm; and the said Raphael M. Pedretti hereby expressly releases the said Charles A. Pedretti from any obligation of any description growing out of his *115 connection with the partnership known as P. Pedretti’s Sons and the said Raphael M. Pedretti assumes and promises to pay all debts and obligations of every description owned by or contracted by said partnership and' it is agreed that the partnership heretofore existing under the name .of P. Pedretti’s Sons consisting of the parties to this agreement shall be and is hereby dissolved. ’ ’
Subsequently, in pursuance of the agreement of the parties, Charles A. Pedretti executed and delivered to Raphael M. Pedretti a bill of sale of-the personal property, selling to him “the following described property situated and contained in the building and premises known as No. 1-0 West Ninth street, Cincinnati, Ohio: all of the fixtures, furniture, library, stock on hand, drawings, sketches, account books, records, and all accounts payable to the firm of P. Pedretti’s Sons, and all other personal property of every kind and description in which I have an interest as a partner in the partnership heretofore doing business as F. Pedretti’s Sons,” then excepting certain sketches and various articles.
In said bill of sale there is also this statement:
“Nor shall this bill'of sale be binding upon me or take effect until said Raphael M. Pedretti has executed a joint agreement with me, each agreeing with the other under no circumstances directly or indirectly to use the name, P. Pedretti’s Sons, by wdiich name the partnership heretofore existing between the parties hereto has been known, except in so far as may be neeessai’y to collect outstanding firm accounts and winding up the unfinished business of said firm.”
The said Charles A. Pedretti executed and delivered to Raphael M. Pedretti. a deed for his interest in the real estate, No. 10 West Ninth street, which has been owned by the partners and at 'which place the business was carried on.
The petition in this case alleges'that notwithstanding the said .settlement and agreement and sale and conveyance of the property, real and personal, of the firm. of.F. Pedretti’s Sons, the said Charles A. Pedretti now claims to be entitled to receive and inspect all mail addressed to P. Pbdretti’s Sons and has notified the United States postal authorities of his claim to that *116 right and has notified them that plaintiff is not entitled to receive the mail addressed to F. Pedretti’s Sons without first submitting the same to defendant’s inspection, and has succeeded in causing all the mail addressed to F. Pedretti’s Sons and portions of other mail addressed to plaintiff individually to be held up; also mail addressed to Pedretti & Son, of which plaintiff is now a member; and he also alleges in his petition that under the laws and regulations governing the delivery of mail by the United States authorities a dispute of the ownership of mail authorizes said authorities to withhold the delivery of mail until such controversy has been determined and that under such laws and regulations the postal authorities have withheld and are now withholding from plaintiff all the. mail addressed to F. Pedretti’s Sons and that they refuse to deliver the same to the plaintiff until the claims of the parties are determined.
The plaintiff claims the exclusive right under the said agreement and contract to receive all mail addressed to F. Pedretti’s Sons, not only for the purpose of closing up the business according to the terms of the contract but to receive the mail of other kinds addressed to F. Pedretti’s Sons.
The defendant denies here the exclusive, right of the plaintiff to receive all mail addressed to F. Pedretti’s Sons but claims an equal right with plaintiff, or at least a right to the inspection of all mail received at the post office addressed to F. Pedretti’s Sons.
A temporary restraining order was granted in this case on. an application of plaintiff, restraining the defendant temporarily from interfering with the receipt of the mails by the plaintiff, bond being given by plaintiff.
Subsequently a modification of the restraining order was made upon application of defendant. The cause is now submitted to me upon motion of defendant to dissolve the temporary restraining order.
It appears in the evidence that mail matter addressed to F. Pedretti’s Sons is received at the post office from various persons ,who have previously had business with the firm of F. Pedretti’s Sons, or had knowledge of the firm, and that orders have been or are likely to be received from different persons *117 to F. Pedretti’s Sons to be filled by them and that all such correspondence is properly subject to the inspection of both the plaintiff and the defendant.
The plaintiff claims that all such correspondence is his alone and that the exclusive right to it came to him as being a part of the good will of the firm of F. Pedretti’s Sons, which passed to him by the sale hereinbefore set forth.
The principal question as to the merits of the case submitted to me is as to the rights of the parties respectively in the matter of receiving the mails. It is a question as to whether the right to receive the mails passed by the sale of Raphael M. Pedretti as a part of the good will of the business.
In Brass & Iron Works Co. v. Payne, 50 Ohio St., 115, it is said in the syllabus:
“1. The good will of a partnership is a part of the property of the firm; .and where a partnership is dissolved, one of the partners transferring to the other all his interest in the firm business and assets, with the understanding that they are to succeed to the business of the old firm, such sale carries with it the seller’s interest in the good will.
“2. Of this good will is the firm name; and where the contract of sale reserves to the retiring partner no rights with respect to the firm name he can not lawfully use it in a business of a like kind, etc.
“3. In a proper case a court of equity will perpetually enjoin such unlawful use of the name of the retiring partner. ’ ’
That case differed from this in some respects, but the expressions, “The good will of a partnership is a part of the property of the firm,” and “Such sale carries with it the seller’s interest in the good will,.’ ’ and ‘ ‘ This good 'will is the firm name’,” have a direct.bearing upon this case.
It is said in the opinion on page 117:
“We assume it to be settled law that, upon a sale by one partner of all his interest in the joint property and effects, to the others, who are to continue the business, his interest in the good .will of the concern goes with the sale, unless stipulated otherwise. Good will is defined in Churton v. Douglass, Johnston’s Eng. Ch., 174, as ‘Every advantage that has been acquired by the old firm in carrying on its business, whether con *118 nected with the premises in which the business was previously carried on, or with the name of the late firm.’ Of this good will the firm name is an important part. It is in the nature of property, and is so treated by the courts of equity. ’ ’
It is said again on page 119:
“When Payne withdrew, his partners took his entire interest. They were to receive all the claims and assets of the old firm, were to pay all its debts, and were to continue the same business at the old stand. ’ ’
Also:
“For every purpose save the right, after expiration of the limited time, to use the old firm name, they were the owners of the good will, and were entitled to be protected from the wrpngful use of the old firm name by the defendant. ’ ’
In that case it had been agreed by Payne, who had sold “his entire interest in the firm business and assets to his partners, Portz and Foster, that they, Portz and Foster, were to continue in occupancy of the old stand, were to close up the business of the old firm, receive the debts due to and pay the debts due by the old firm and have the use of the firm name for a period of sixty days or until the formation of a corporation within that time for the continuance of the business at the same place. ’ ’
It will be seen that by the agreement the 'use of the firm name by the remaining partners was limited to the period of sixty days. With that exception, the case was substantially like the case at bar.
After the period of sixty days Portz and Foster were not to use the firm name. The court say, as above set forth, that the firm name is a part of the good will, that the good will is part of the property of the firm and that by it is meant every advantage that has been acquired by the old firm in carrying on its business whether connected with the premises in which the business was previously carried on or with the name of the late firm.
In the case at bar, Charles A. Pedretti sold to Paphael M. Pedretti and conveyed to him his interest in the real estate of the firm, being the place where the business was carried' on *119 and, “all other property of the partnership of F. Pedretti’s Sons, including a full and complete settlement of the business, the partnership, the assets and the accounts- of the said partnership,” except the use of the firm name, which was to be “abandoned.” The name was not to be used by either of the parties.
In the bill of sale as quoted above certain articles of personal property were mentioned and-then, “all other personal property of every kind and description in which I have an interest as a partner in the partnership heretofore doing business as F. Pedretti’s Sons.”
I am of opinion that Charles sold to Raphael as a “part of the property of the firm” the good will of the partnership, of which good will the firm name is only a part and that part was expressly excluded, leaving all other elements of good will as a part of the property sold.
I am also of the opinion that among the elements of good will, as defined in Churton v. Douglass, supra, as “every advantage that has been acquired by the old firm in carrying on its business, whether connected with the premises in which the business was previously carried on or with the name of the late firm,” is the knowledge that persons throughout the country have acquired of that firm by doing business with it . or otherwise and their disposition to do business with it. I think that an “advantage” that Raphael M: Pedretti took by his purchase.
. lie took every advantage that had been acquired by the old firm in carrying on its business except the advantage, of the use of the name of the old firm which it was agreed should be abandoned and not used by either of the parties. I am of opinion that by the sale Charles A. Pedretti parted with all his interest of every kind as a partner in the firm of F. Pedretti’s Sons and in its property,.’including as a part of its property the good will, excepting only the reservation that neither of the partners should use the name of F. Pedretti’s Sons.
’ I am of opinion that the mere receipt of mail addressed to F. Pedretti’s Sons by Raphael M. Pedretti is not a use, direct or indirect, of the firm name within the meaning of the contract. Raphael M. Pedretti would not have the right upon the receipt *120 of mail addressed -to F. Pedretti’s Sons to acknowledge it or answer it in that name or in any such way as to deceive the writers by leading them to believe that the partnership of F. Pedretti’s Sons was still in existence.
It would be his duty to refrain from any deception upon that subject but I do not doubt his right to receive such mail as may come addressed to F. Pedretti’s Sons and to enjoy the advantage of it so long as there is no concealment or fraud upon his part in allowing the writers to understand that F. Pedretti’s Sons are still in business. It would be his duty upon the receipt of such mails, if he purposes to acquire business in that way, to advise the writers that F. Pedretti’s Sons were no longer in business; that that partnership had been dissolved and that there was now no firm of that name doing business.
But it is claimed by the defendant, Charles A. Pedretti, that this case is not in any view of it a proper case for injunction.
I am of opinion, however, that upon the allegations in the petition it is a proper case, for the allegations show and the proof shows that the defendant has notified the post office authorities of his claim of right to inspect the mails and has caused the post office authorities under their rules and regulations in such cases to hold up and is still causing them to hold up the mail and refuse to deliver to Raphael M. Pedretti the mail to which he is rightfully entitled until the rights of the parties shall be determined in a court of proper jurisdiction and I think, therefore, this application for injunction is the proper proceeding, and I do not think there is any adequate remedy at law.
The principle governing the question, I think, is stated in the said case of Brass & Iron Works Co. v. Payne, supra, in the opinion, on page 118, where it is said:
“It seems equally clear that in a matter of this kind, where the injury is an interruption of business, causing a diminution of it, it is difficult to establish damage to a high degree of certainty, and by direct proof. Hence, in order' to entitle the purchasing partners to the interposition of a court of equity to forbid a continuance of the wrong, it is not necessary, nor important, that they first show, by proof, special pecuniary damage. ’ ’
Galvin & Bauer, for plaintiff.
Probasco & Probasco, contra.
The motion to dissolve the temporary restraining order originally granted in this case will be overruled and the modification subsequently made of' the temporary restraining order will be set aside and the temporary restraining order will remain in full force until the final determination of the case.
I suppose that the foregoing findings of law and facts and the construction of the contract between the parties will amount practically to a final disposition of the case, but all that is actually now before me is the motion to dissolve the temporary restraining order.